UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

-------------------------------------------------------------x
*In re:*                                                     :   **Chapter 11**
                                                             :
                                                             :   **Case No. 12-11004 (KJC)**
**CONTRACT RESEARCH**                                        :
**SOLUTIONS, INC.,** *et al.*,                               :   **Jointly Administered**
                                                             :
        **Debtors.**[1]                                      :   Proposed Objection Deadline: May 7, 2012 at 12:00 noon (ET)
                                                             :   Proposed Hearing Date: May 9, 2012 at 10:00 a.m. (ET)
                                                             :
-------------------------------------------------------------x

## MOTION FOR ORDER, PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, APPROVING THE TERMS OF, AND AUTHORIZING CETERO TO ENTER INTO, GLOBAL SETTLEMENT AGREEMENT

Contract Research Solutions, Inc. and its affiliated debtors as debtors in possession in the above-captioned cases (collectively, "Cetero") submit this motion (the "Motion") for entry of an order (the "Order"), approving the terms of, and authorizing Cetero to enter into, that certain global settlement agreement (the "Global Settlement Agreement"), attached as Exhibit A to the Order attached hereto as Exhibit 1, by and among (i) Cetero, (ii) the prepetition and postpetition Requisite Secured Lenders (as defined in the Global Settlement Agreement), (iii) the Agents (as defined in the Global Settlement Agreement) for such Requisite Secured Lenders, and (iv) the Official Committee of Unsecured Creditors appointed in these cases and each member of such

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are: Contract Research Solutions, Inc. (3750); Allied Research Holdings Inc. (not applicable); Allied Research International Inc. (Ontario) (not applicable); Allied Research International, Inc. (Florida) (6246); Allied Research International India, LLC (not applicable); Allied Research International U.S., LLC (not applicable); BA Research Co. (not applicable); BA Research International Holdings, LLC (not applicable); BA Research International, L.P. (0418); BARI Management, LLC (not applicable); BARI Merger Sub, LLC (not applicable); BARI Partners, G.P. (0418); Bioassay Research Co. (5944); CRS Management, Inc. (2856); CRS Real Estate Holdings LLC (not applicable); Diabetes and Glandular Disease Research Associates, Inc. (1817); Gateway Medical Research, Inc. (0344); PRACS Dermatology, LLC (not applicable); PRACS Institute, Ltd. (7073); Specialty Research, Inc. (5373). Cetero's corporate headquarters is located at 2000 Regency Parkway, Suite 255, Cary, North Carolina 27518.

committee in their capacity as such, on behalf of themselves and their respective subsidiaries and affiliates (collectively, the "Committee," together with Cetero, the Requisite Secured Lenders, and the Agents, the "Parties" and each, individually, a "Party"). In support of this Motion, Cetero respectfully represents:

## BACKGROUND
### General

1. On March 26, 2012 (the "Petition Date"), Cetero commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Chapter 11 Cases"). Cetero continues to operate its business and manage its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes only, and are jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. On April 5, 2012, the Office of the United States Trustee appointed the Committee in the Chapter 11 Cases. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

### History Of Settlement Negotiations

3. After several months of intense negotiations, Cetero commenced the Chapter 11 Cases with significant support from Cetero's prepetition secured lenders for a comprehensive restructuring process, including a sale of substantially all of its assets followed by prosecution of a fully-supported chapter 11 plan that would allow Cetero to pay administrative claims and unsecured priority claims in full in cash.[2] To this end, shortly before the Petition Date, Cetero

---

[2]  Specifically, on the Petition Date, Cetero filed its *Motion, Pursuant to Bankruptcy Code Sections 105(a), 363, 365, 503 and 507, Bankruptcy Rules 2002, 3007, 6004, 6006, 9007 and 9014 and Local Rule 6004-1,*
(continued...)

01:12064440.1

2

entered into an asset purchase agreement (the "Asset Purchase Agreement")[3] with a designee of the agents for Cetero's first lien prepetition lenders for the sale of substantially all of the assets of Cetero pursuant to a court-supervised sale process. At the same time, approximately seventy percent of Cetero's first lien and second lien prepetition secured lenders pledged their support for Cetero's sale efforts by entering into a sale support agreement (the "Sale Support Agreement") with Cetero.[4] Cetero filed the Sale Motion in connection with the proposed sale of substantially all of its assets on the Petition Date. On April 13, 2012, the Bankruptcy Court approved Cetero's marketing and sale process, and bidding procedures with respect thereto, *see* Docket No. 111.

4. Also based on the prepetition negotiations, certain of Cetero's prepetition lenders agreed to provide postpetition financing to Cetero pursuant to that certain Senior Secured Priming and Superpriority Debtor-in-Possession Credit Agreement (the "DIP Facility").[5] Under the DIP Facility, Cetero secured interim approval of its postpetition financing, which closed on March 27, 2012, providing Cetero access to $2,400,000 in new postpetition funding pending a later hearing to consider final approval of the DIP Facility in the aggregate amount of $15 million. *See* Docket No. 45. Meanwhile, on April 5, 2012, the Committee was appointed and

---

(...continued)
> *for: (A) Order (I) Approving Bidding Procedures in Connection with Sale of Assets of Cetero, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale Hearing, (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (V) Granting Related Relief; and (B) Order (I) Approving Purchase Agreement, (II) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (III) Granting Related Relief* [Docket No. 15] (the "Sale Motion"), which provides for the sale of all or substantially all of Cetero's assets via a stalking horse sale.

[3] *See* Exhibit B to Sale Motion.

[4] The Sale Support Agreement was attached as Exhibit A to the *Declaration of Michael T. Murren in Support of Cetero's First-Day Motions* [Docket No. 2].

[5] *See Motion for Entry of Interim and Final Orders (I) Authorizing Cetero (A) to Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 353, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* [Docket No. 13] (the "DIP Motion").

thereafter objected to the Sale Motion, *see* Docket No. 102, and final approval of the DIP Facility, *see* Docket No. 126. Even prior to these filings, however, Cetero, the Committee, and counsel to the US First Lien Agent (as defined in the Global Settlement Agreement) already were engaged in substantive negotiations regarding a potential global settlement of all issues. Indeed, these preliminary negotiations resulted in resolution of the Committee's objection with respect to the entry of the Bidding Procedures Order (as defined in the Global Settlement Agreement), and allowed the Parties to continue consensually the final hearing on the DIP Facility pursuant to the *Order Approving Stipulation Regarding Extension of Time Periods Relating to Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Secured Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties and (III) Scheduling Final Hearing* [Docket No. 181] (the "DIP Stipulation"). The DIP Stipulation initially rescheduled the hearing for final approval of the DIP Facility to May 1, 2012 at 3:00 p.m., and the hearing was subsequently rescheduled to May 9, 2012, pursuant to a second stipulation entered on May 1, 2012.[6]

5.  The Parties have continued negotiations regarding not only final approval of the DIP Facility, but a broader consensual resolution to these Chapter 11 Cases that would permit Cetero to maintain its current schedule and strategy of effecting a sale of all assets with the full support of the Committee, and allow Cetero to pay administrative and certain other priority claims following execution of the proposed sale.

---

[6] *See Order Approving Second Stipulation Regarding Extension of Time Periods Relating to Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* [Docket No. 197].

01:12064440.1

6. These negotiations have bore fruit in the form of the Global Settlement Agreement. After extensive, good faith negotiations, the Parties are pleased to present a settlement resolving, fully and finally, all outstanding issues and objections of the Committee related to final approval of the DIP Facility, announcing the Parties' support for the upcoming sale, and providing for the orderly resolution of these Chapter 11 Cases as well as the employee incentive plan to properly incentivize key employees in Cetero's restructuring. In fact, the Global Settlement Agreement represents a significant accomplishment for the Parties. As described below, the Global Settlement Agreement resolves all outstanding Committee objections, and also provides a concrete roadmap toward the further goal of an orderly wind-down of Cetero's estates pursuant to either a chapter 11 plan or a structured dismissal that is consistent with the terms of the Sale Support Agreement.

7. And the Global Settlement Agreement earmarks up to $1,500,000—a significant sum in these Chapter 11 Cases—for payment of allowed prepetition, unsecured claims, and those claims asserted pursuant to section 503(b)(9) of the Bankruptcy Code. This amount was funded from: (i) amounts previously budgeted for fees and expenses of Jefferies & Company, Inc. (Cetero's investment banker) in excess of amounts necessary to satisfy the fees set forth in the engagement letter, assuming that the sale closes by June 30, 2012, as expected; (ii) a portion of the funds designated as a deposit for utility providers (which amount has already been fully funded in accordance with a prior Court order);[7] and (iii) other sources as set forth in paragraph 2 of the Global Settlement Agreement. Thus, through the concessions and agreements embodied

---

[7] *See Interim Order, Pursuant to Bankruptcy Code Section 105(a) and 366 and Bankruptcy Rules 6003 and 6004, Determining Adequate Assurance of Payment for Future Utility Services and Scheduling Final Hearing* [Docket No. 36].

01:12064440.1

in the Global Settlement Agreement, the Parties are able to present a comprehensive restructuring strategy with the full support of the primary constituencies in the Chapter 11 Cases.

## JURISDICTION

8.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.  The statutory bases for the relief requested herein are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## RELIEF REQUESTED

10. By this Motion, Cetero seeks entry of the Order, substantially in the form attached hereto as Exhibit 1, approving the terms of, and authorizing Cetero to enter into, the Global Settlement Agreement, and granting such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

11. The following represents a summary of the salient terms of the Global Settlement Agreement:[8]

- Committee Support: The Committee agrees to fully support: (a) final approval of the DIP Facility; (b) the sale process, including the entry of a final order approving the Sale Motion; (c) entry of a final order approving the employee incentive plan, as modified by the Global Settlement Agreement or other satisfaction of these obligations; and (d) approval of an orderly wind-down of Cetero's estates. The Committee also agrees that all challenges to the prepetition liens and claims asserted by Cetero's secured lenders, or to any stipulation set forth in the Interim DIP Order (as defined in the Global Settlement

---

[8] To the extent there is any conflict between the summary set forth below and the actual terms of the Global Settlement Agreement as executed by the Parties, the terms of the Global Settlement Agreement govern.

Agreement), shall be deemed waived, released and barred upon entry of the Final DIP Order (as defined in the Global Settlement Agreement). The form of the Final DIP Order to be submitted at the hearing for final approval of the DIP Motion is attached as <u>Exhibit A</u> to the Global Settlement Agreement and a comparison of that order to the previously approved Interim DIP Order, *see* Docket No. 45, is attached hereto as <u>Exhibit 2</u>.

- <u>Funding of Amounts for Recovery of General Unsecured Creditors</u>: Funds up to an aggregate amount of $1,500,000 (the "<u>GUC Designated Funds</u>"), consisting an allocated amount of $1,000,000 and up to an additional $500,000 based on receiving half of the savings that accrues compared with what was budgeted for certain categories of payments, are designated for the payment of Allowed Unsecured Claims and Committee Claims (as defined in the Global Settlement Agreement) upon the closing of an Acceptable Sale (as defined in the Final DIP Order). The sources of such funds shall be as set forth in paragraphs 2(a)-(f) of the Global Settlement Agreement. The fees and costs of the Committee and its advisors shall be paid solely from these funds, and the funds are to be deposited in a segregated account at a financial institution designated by the Committee.

- <u>Subordination of Secured Lender Claims After Acceptable Sale and Payment of GUC Designated Funds</u>: The Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties (each as defined in the Global Settlement Agreement) agree to subordinate any and all prepetition deficiency claims and Adequate Protection Super-Priority Claims (as defined in the Global Settlement Agreement), as well as all liens securing such claims, and the DIP Secured Parties (as defined in the Global Settlement Agreement) agree to subordinate any and all of its claims and liens, solely to the extent necessary to permit distribution of the GUC Designated Funds in accordance with the Global Settlement Agreement.

- <u>Releases</u>: As part of the compromise embodied in the Global Settlement Agreement, the Parties have negotiated and agreed to the following releases, all effective upon closing of an Acceptable Sale and funding of the GUC Designated Funds in accordance with the Global Settlement Agreement. Each of these releases represents an integral part of the Global Settlement Agreement.

    o *Agents and Secured Lenders*: The KRG Entities (defined below), Cetero, and the Committee release the Agents and Secured Lenders (as defined in the Global Settlement Agreement) from claims, causes of action, obligations and liabilities relating to Cetero arising prior to or upon closing of an Acceptable Sale.

    o *Directors and Officers*: The KRG Entities, Cetero, the Agents and the Committee release Cetero's directors and officers of Cetero from claims, causes of action, obligations and liabilities relating to Cetero arising prior to or upon closing of an Acceptable Sale.

    o *KRG Entities*: KRG Capital Fund III, L.P., KRG Capital Fund III (FF), L.P., KRG Capital Fund III (PA), L.P., and KRG Co-Investment, LLC, and affiliates of any

01:12064440.1

7

such entity that hold equity in Cetero (the "KRG Entities"), agree to waive and release their unsecured claims relating to promissory notes issued by certain Cetero debtors dated January 22, 2009, relating to Cetero's facility in San Antonio, Texas. In consideration therefor, Cetero, the Agents and the Committee release all KRG Entities from claims, causes of action, obligations and liabilities relating to Cetero arising prior to or upon closing of an Acceptable Sale (as defined in the Global Settlement Agreement).

- Entry of Settlement Approval Motion; Continuance of Final DIP Hearing. Cetero has agreed to file this Motion by May 2, 2012, and seek an expedited hearing on the Motion. The Parties also agree to continue the final DIP Financing hearing to May 9, 2012, or a later date to coincide with the hearing on this Motion. Finally, the Global Settlement Agreement is conditioned on entry of the Order in a form acceptable to the Parties.

**Entry Into The Global Settlement Agreement Is In Cetero's Best Interests.**

12. Bankruptcy Rule 9019(a) permits a bankruptcy court to approve a "compromise or settlement" after notice and a hearing. In many instances, compromises or settlements under Bankruptcy Rule 9019 are considered to be a use of property of the estate outside the ordinary course of business under section 363(b) of the Bankruptcy Code. *See, e.g.*, *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d. Cir. 1999) (noting that settlements and compromises are generally considered to be a sale of property of the estate). For obvious reasons, compromise and settlement agreements are standard components of the bankruptcy process and are favored over litigation. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'") (internal citations omitted); *see also In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006).

13. When courts consider whether to approve a settlement pursuant to Rule 9019, the central inquiry is whether the compromise is in the best interests of the estate. To this end, courts in the Third Circuit "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91

F.3d at 393. The Third Circuit has adopted a balancing test under which a bankruptcy court should consider the following four factors to determine whether to approve a particular compromise or settlement:

(a) the probability of success in litigation;

(b) the likely difficulties in collection;

(c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d) the paramount interest of the creditors.

*In re Martin*, 91 F.3d at 393; *see also In re Nutraquest, Inc.*, 434 F.3d at 645. Ultimately, a proposed settlement need not be the best result that the debtor could have achieved, as long as it falls within the "reasonable range of litigation possibilities." *In re Energy Coop., Inc.*, 886 F.2d 921, 929 (7th Cir. 1989); *see also In re Sea Containers Ltd.*, No. 06-11156, 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008); *In re The Columbia Gas Sys., Inc.*, No. 91-803, 1995 WL 404892, at *1 (Bankr. D. Del. June 16, 1995).

14. Accordingly, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after notice and a hearing, approve a compromise or settlement so long as the proposed compromise or settlement is fair, reasonable, and in the best interests of the estate. *See In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("Under Rule 9019(a), the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable."); *In re Northwestern Corp.*, No. 03-12872, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("In exercising [its] discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interest of the estate.") (internal citation omitted).

01:12064440.1

15. Entry into the Global Settlement Agreement is appropriate and consistent with the applicable Bankruptcy Rule 9019 factors.[9] As an initial matter, the Global Settlement Agreement avoids litigation by resolving the Committee's currently pending objection to the DIP Motion, including potential expedited discovery and potential delay associated with holding potentially contested hearings. Such litigation would have generated unnecessary administrative expenses and potentially delayed the auction and sale of Cetero's assets. Moreover, although Cetero believes that final approval of the DIP Facility ultimately would have occurred, there is no guaranty that the Committee would have been unsuccessful in prosecuting its objections, which would have introduced uncertainty into the Chapter 11 Cases. As such, there is ample basis for avoiding litigation of these issues by reaching a consensual resolution given the likelihood, however small, that the Committee's objections may prevail.

16. In addition, the complexity of such litigation and the delay that would result from contested hearings also dictates that the Global Settlement Agreement should be approved. Indeed, even if the same results ultimately were achieved, potential delay and uncertainty would adversely affect Cetero's business because Cetero's customers could interpret such litigation as reflecting a broader concern regarding Cetero's future prospects. In truth, Cetero always has been confident that its restructuring strategy represents the best possible outcome for Cetero's stakeholders, and the Global Settlement Agreement paves the way to execute this strategy in the most efficient manner available, which has the added benefit of conveying reassurance to the market generally. This generates significant value, which redounds to the benefit of Cetero, its creditors, and other parties in interest.

---

[9] One of the four factors used in the 9019(a) context—collection difficulties— is not applicable under the current facts and circumstances of the Global Settlement Agreement.

17. And as set forth above, the Global Settlement Agreement does much more than resolve Committee objections. It presents a comprehensive restructuring plan that funds a meaningful recovery for general unsecured creditors, notwithstanding Cetero's heavily leveraged capital structure. The sources of this funding are concessions made by Cetero, the Requisite Secured Lenders, and the KRG Entities alike, in the form of reduced payments made under the KEIP Plan, waivers of claims, and identification and designation of additional funds. In particular, the Requisite Secured Lenders have agreed that cash collateral and proceeds from an advance under the DIP Facility made concurrently with the closing of an Acceptable Sale may be used by Cetero to fund obligations junior to the priority of their claims, despite the fact that such lenders likely will not be paid in full upon the closing of Cetero's asset sale. These compromises were the result of extensive negotiations and a diligent and thorough analysis of Cetero's funding needs given the expedited schedule of these Chapter 11 Cases, and all but ensures that the forthcoming sale of Cetero's assets will proceed apace and without interruption. Indeed, any such disruption in these Chapter 11 Cases could have negatively impacted liquidity and resulted in defaults under the DIP Facility. The Global Settlement Agreement, however, secures support for Cetero's strategy from key creditor constituencies, and as such is in the best interests of all creditors.

18. Thus, entering into the Global Settlement Agreement is a sound and reasonable exercise of Cetero's business judgment that will secure support for the expeditious sale of Cetero's assets and the orderly wind-down of Cetero's estates. Moreover, the Global Settlement Agreement memorializes a key achievement—namely, some recovery for prepetition unsecured creditors—that was far from assured at the outset of these Chapter 11 Cases. Under the circumstances, and given the concessions made by all parties to the Global Settlement

01:12064440.1

Agreement, the Motion should be granted and the Global Settlement Agreement should be approved.

19. Courts in this and other jurisdictions have approved relief similar to the relief requested in this motion. *See, e.g., In re Genesis Health Ventures, Inc.* 266 B.R. 591 (D. Del. 2001); *In re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir. 1993); *In re Visteon Corp.*, Case No. 09-11786 (Bankr. D. Del. June 17, 2010) (order authorizing debtors to implement terms of a postpetition plan support agreement); *In re Velocity Express Corp.*, Case No. 09-13294 (Bankr. D. Del Dec. 15, 2009) (same); *In re Intermet Corp.*, Case No. 08-11859 (Bankr. D. Del. June 5, 2009) (same); *In re Global Power Equip. Group, Inc.*, Case No. 06-11045 (Bankr. D. Del. Oct. 31, 2007) (same); *In re Federal-Mogul Global, Inc.*, Case No. 01-10578 (Bankr. D. Del. Feb. 6, 2007) (same); *In re Owens Corning*, Case No. 00-03837 (Bankr. D. Del. June 29, 2006) (same); *see also In re Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. Aug. 9, 2010) (same); *In re Tronox Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Dec. 23, 2009) (same); *In re Movie Gallery, Inc.*, Case No. 07-33849 (Bankr. E.D. Va. Feb, 6, 2008) (same).[10] Accordingly, Cetero submits that entry into the Global Settlement Agreement is appropriate, in the best interests of their estates and all stakeholders, and should be approved under Bankruptcy Rule 9019.

**Entry Into The Settlement Agreement Is An Exercise Of Sound Business Judgment**

20. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." In the Third Circuit, courts have authorized a debtor's use of property of the estate outside the ordinary course of business when such use has a "sound business purpose"

---

[10] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request from Cetero's counsel.

and is proposed in good faith. *See In re Martin*, 91 F.3d at 395; *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153-54 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991). Courts authorize a debtor to use property of the estate outside the ordinary course of business if the debtor can show that: (a) a sound business reason or emergency justifies the proposed use; (b) adequate and reasonable notice was provided to all interested parties; (c) the proposed use was requested in good faith; and (d) fair and reasonable consideration is provided in exchange for the use of estate assets. *See, e.g., In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at *3 (D. Del. May 20, 2002); *In re Delaware & Hudson Ry. Co.*, 124 B.R. at 176.

21. Once a debtor articulates a valid business justification under section 363, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company. *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008). Further, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp., (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See In re Integrated Res.*, 147 B.R. at 656; *In re Johns-Manville*, 60 B.R. at 615-16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions."). Thus, if a

debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(l) of the Bankruptcy Code.

22. Additionally, under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." Courts in this and other districts have relied on both sections 105(a) and 363(b) when approving a plan support agreement, finding that such relief is entirely consistent with the applicable provisions of the Bankruptcy Code. *See, e.g.*, *In re Visteon Corp.*, Case No. 09-11786 (Bankr. D. Del. June 17, 2010) (order authorizing debtors to implement terms of a postpetition plan support agreement); *In re Intermet Corp.*, Case No. 08-11859 (Bankr. D. Del. June 5, 2009) (same); *In re Global Power Equip. Group, Inc.*, Case No. 06-11045 (Bankr. D. Del. Oct. 31, 2007) (same); *In re Federal-Mogul Global, Inc.*, Case No. 01-10578 (Bankr. D. Del. Feb. 6, 2007) (same); *In re Owens Corning*, Case No. 00-03837 (Bankr. D. Del. June 29, 2006) (same); *see also In re Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. Aug. 9, 2010) (same); *In re Tronox Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Dec. 23, 2009) (same); *In re Movie Gallery, Inc.*, Case No. 07-33849 (Bankr. E.D. Va. Feb, 6, 2008) (same).[11]

23. As described above, the Global Settlement Agreement represents a major advance in the execution of Cetero's restructuring. Entering into the Global Settlement Agreement is a sound and reasonable exercise of the Cetero's business judgment that creates a high degree of certainty by securing the support of the Parties for Cetero's forthcoming sale and the orderly wind-down of Cetero's estates, while simultaneously providing a recovery to Cetero's general

---

[11] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request.

01:12064440.1

unsecured creditors. As such, Cetero's use of property outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code is warranted and should be approved.[12]

### WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

24. To implement the foregoing successfully, Cetero seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14 day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Such a waiver is appropriate under the circumstances presented because the Parties' compromise, embodied in the Global Settlement Agreement, has immediate implications, including causing the Committee to withdraw its objections to Cetero's postpetition financing and terminating the Committee's period to challenge liens asserted by Cetero's prepetition secured lenders.

### NOTICE

25. Cetero has provided notice of this Motion by either electronic mail, facsimile, or first class mail to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the official committee of unsecured creditors; (c) the agents to Cetero's prepetition and postpetition secured financing facilities; (d) each lender in Cetero's prepetition and postpetition secured financing facilities; and (e) those parties who have formally filed request for notice to these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

### NO PRIOR REQUEST

26. No previous request for the relief sought herein has been made by Cetero to this or any other court.

---

[12] Moreover, since the property in question principally originates from budget items or proposed uses that were or are themselves the subject of prior motions pending before the Court, notice is appropriate under the circumstances.

01:12064440.1

**WHEREFORE**, Cetero respectfully requests that the Court enter the Oder, substantially in the form attached hereto as Exhibit 1, approving the Global Settlement Agreement attached to the Order as <u>Exhibit A</u>, and granting Cetero such other and further relief as is just and proper.

Dated: May 1, 2012
      Wilmington, Delaware

*s/ Andrew L. Magaziner*
M. Blake Cleary (No. 3614)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

Luc A. Despins
Sung Ho Choi
PAUL HASTINGS LLP
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

-and-

Marc J. Carmel
Christian M. Auty
PAUL HASTINGS LLP
191 North Wacker Drive, Thirtieth Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

*Counsel to the Debtors and Debtors in Possession*