## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **CONTRACT RESEARCH** | : | |
| **SOLUTIONS, INC.,** *et al.*[1] | : | Case No. 12-11004 (KJC) |
| | : | (Jointly Administered) |
| Debtors | : | (Re: D.I. 62) |

## MEMORANDUM[2]

## BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

On March 26, 2012 (the "Petition Date"), Contract Research Solutions, Inc. and its

affiliated debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code.  One of the Debtors, Allied Research International, Inc. ("Allied"), leased

certain real property from Golden Glades Associates, LLP ("Golden Glades"), a commercial

lessor.  Before the Court is the Debtors' motion to (A) sever and reject the Third Amendment of

the Golden Glades Lease, and (ii) abandon certain personal property, pursuant to Sections

105(a), 365(a) and 554 of the Bankruptcy Code respectively, *nunc pro tunc* to the petition date

(D.I. 62) (the "Motion").   BRI 1814 GGOP, LLC ("BRI"), the successor-in-interest to Golden

Glades, filed an objection to the Motion.  (D.I. 113).  For the reasons set forth herein, the Motion

will be denied, in part, with respect to the Debtors' request to sever and reject the Third

---

[1]The debtors in these chapter 11 cases are: Contract Research Solutions, Inc.; Allied Research Holdings Inc.; Allied Research International, Inc. (Ontario); Allied Research International, Inc. (Florida); Allied Research International India, LLC; Allied Research International U.S., LLC; BA Research Co.; BA Research International Holdings, LLC; BA Research International, L.P.; BARI Management, LLC; BARI Merger Sub, LLC; BARI Partners, G.P.; Bioassay Research Co.; CRS Management, Inc.; CRS Real Estate Holdings LLC; Diabetes and Glandular Disease Research Associates, Inc.; Gateway Medical Research, Inc.; PRACS Dermatology, LLC; PRACS Institute, Ltd.; and Specialty Research, Inc..

[2]This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the motion before it pursuant to 28 U.S.C. § 1334 and §157(a).  This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A) and (O).

Amendment to the lease agreement, and granted, in part, with respect to the Debtors' request to abandon certain personal property.

Facts

As of the Petition Date, Allied was the lessee under a lease dated March 24, 2004 (the "Golden Glades Lease") with Golden Glades (now, BRI) as lessor.  The two parties entered into three subsequent agreements, each labeled amendments to the Golden Glades Lease: (i) the First Amendment to the Golden Glades Lease, dated April 29, 2004 (the "First Amendment"), (ii) the Second Amendment to the Golden Glades Lease, dated March 8, 2007 (the "Second Amendment"), and (iii) the Third Amendment to the Golden Glades Lease, dated August, 2007 (the "Third Amendment").  The Golden Glades Lease, the First Amendment, and the Second Amendment all relate to premises located at 1405 N.W. 167th Street, Miami, FL 33169 (the "Original Building"); the Third Amendment relates to an unattached, adjacent premises located at 1395 N.W. 167th  Street, Miami, FL 33169 (the "New Building").  The Original Building and the New Building are in the same building complex and have the same tax folio identification number.  The Debtors are not now utilizing the New Building for any operations and were current on the rent through the date of filing of the Motion.  On April 12, 2012, the Debtors' representative delivered possession of keys to the New Building  to BRI.  Subsequently, representative of BRI returned the keys to the New Building to the Debtors.  On April 13, 2012, the Debtors' representative sent, via Federal Express, the keys to the New Building to an address designated by BRI, and the keys were received by BRI on Monday, April 16, 2012.

As a part of the Debtors' restructuring efforts, the Debtors filed the Motion.  The Motion asks the Court to grant two forms of relief: (1) to sever and reject the Third Amendment to the

2

Golden Glades Lease (thereby freeing Allied from the rent for space in the New Building), and

(2) to abandon certain personal property located in the New Building.

Discussion

I.    <u>Request to Sever and Reject Lease</u>

Bankruptcy Code §365 permits a bankruptcy trustee (or a debtor in possession, pursuant

to Bankruptcy Code §1107) to assume or reject an executory contract or unexpired lease.

Assumption or rejection of an executory contract or unexpired lease must be done in its entirety;

the executory contract or unexpired lease cannot be assumed or rejected in part. *In re Fleming*

*Co., Inc.,* 499 F.3d 300, 308 (3d Cir. 2007); *see also In re Buffet Holdings, Inc.*, 387 B.R. 115,

119 (Bankr. D. Del. 2008) (stating that the debtor "must assume all the terms of the lease and

may not pick and choose only favorable terms to be assumed").  The rationale underlying this

fundamental principle is that a debtor may not retain the benefits of a lease without accepting its

burdens. *Id*.

However, courts may review a single contract to determine whether it includes multiple

agreements that are severable, thereby permitting a debtor to assume part of the contract while

rejecting its other, severable parts. *Buffet Holdings*, 387 B.R. at 120 (stating "[i]f a single

contract contains separate, severable agreements . . . the debtor may reject one agreement and

not another").  Thus, the threshold issue is whether the Golden Glades Lease and the Third

Amendment represent two independent agreements that may be treated separately under §365, as

contended by the Debtors, or whether the Golden Glades Lease and Third Amendment are parts

of a single, integrated contract between the parties, as argued by BRI.  The determination of

whether an agreement is severable is a question of state law. *Id.* at 120, citing *In re T&H Diner,*

3

*Inc.*, 108 B.R. 448, 453 (D. N.J. 1989) ("[t]he question of divisibility is a matter of state law").

The Golden Glades Lease provides that Florida law governs the agreement.  Golden Glades

Lease at §43.

 Under Florida law, whether a contract is severable turns on the intent of the parties.

*Local 234 of United Ass'n of Journeymen & Apprentices v. Henley & Bockwith, Inc.*, 66 So.2d

818, 822 (Fla. 1953).  Absent ambiguity, the intent of the parties is gleaned from the four corners

of the contract.  *In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir. 1987). To determine the

parties' intent, a court may examine whether (i) the nature and purpose of the agreements are

different; (ii) the consideration for each agreement is separate and distinct; and (iii) the parties'

obligations under the agreements are interrelated.  *Id*.

 The Court begins its analysis by looking within the four corners of the contract.  The

Third Amendment explicitly states the parties' intent to make the Third Amendment part of the

Lease:

> NOW THEREFORE, in consideration of the mutual covenants and agreements
> herein contained and for other good and valuable consideration, the receipt and
> sufficiency of which are hereby acknowledged, the parties hereby agree as
> follows:
>
> 1. <u>Amendments to Lease</u>: The following provisions shall either be deleted from
> the Lease or amended and restated as hereinafter set forth:

Third Amendment at Recitals and §1.  The Third Amendment further provides:

> 2. <u>Lease Ratified</u>: Except as modified by this Third Amendment, all other terms
> and conditions of the Lease shall be unmodified and shall remain in full force and
> effect and are hereby ratified, confirmed and approved in all aspects.

Third Amendment §2.  These provisions of the Third Amendment plainly suggest a direct

connection between the Golden Glades Lease and the Third Amendment:  the parties intended

that terms and conditions of the Third Amendment would amend and ratify the Golden Glades

4

Lease.  This demonstrates evidence of the integrated nature of these documents.

The Debtors argue that the severability clause in the Golden Glades Lease demonstrates the parties' intent to allow severability of the Third Amendment.  The clause provides:

> 35.    SEVERABILITY.  The parties intend this Lease to be legally valid and enforceable in accordance with all of its terms to the fullest extent permitted by law. If any term hereof shall be invalid or unenforceable, the parties agree that such term shall be stricken from this Lease, the same as if it never had been contained herein. Such invalidity or unenforceability shall not extend to any other term of this Lease, and the remaining terms hereof shall continue in effect to the fullest extent permitted by law, the same as if such stricken term never had been contained herein.

Third Amendment §35.  The severability clause merely contemplates the striking of any portion of the agreement that does not comply with the law while leaving all other lease terms intact. Golden Glades Lease §35.  The Debtors do not challenge the legality of any portion of the Golden Glades Lease.  The severability clause is not implicated here.

Both parties also refer to and rely on the *Gardinier* decision by the Court of Appeals for the Eleventh Circuit to support their respective positions.  The *Gardinier* Court considered whether a single instrument for the sale of land, entered into pre-petition, that also contained a provision as to when and how the real estate broker was to be compensated, was severable. *Gardinier*, 831 F.2d  at 974-75. The agreement, entitled "Contract for Sale of Real Estate" (the "Sale Contract"), set forth the terms for the sale of the real estate between the seller and purchaser, as well the terms by which the broker would be paid.  *Id*.  After its chapter 11 filing, the debtor moved to assume the Sale Contract; the Official Committee of Unsecured Creditors objected to payment of the broker's commission.  The broker argued that the Sale Contract must be accepted or rejected in its entirety as a single agreement.  *Id*.  The *Gardinier* Court, reviewing the Sale Contract itself, as well as the nature and purpose of the agreements, the consideration

5

for each agreement, and the interrelatedness of the agreements, concluded that the agreements were separate and distinct. *Id.* at 976-77. The Court focused on the separateness of the promisor and promisee, as well as the separate consideration involved for each transaction: one agreement was between the buyer and seller for the sale of real property; one agreement between the seller and the broker for a commission (with no obligations running between the buyer and the broker). *Id.* at 977-78. Thus, the factors considered by the Court weighed heavily in favor of severability because of the separateness in nature and scope of the agreements. *Id.* at 976.

In this case, although the Third Amendment adds a new leased premises, other provisions are interrelated to the original Golden Glades Lease. Significantly, the Third Amendment includes, *inter alia*, the following provisions:

1.    An extension of the lease term for *all* leased space by five years (Third Amendment, §1(F));

2.    Rent abatement for *all* leased space if the space located in the New Building (added by the Third Amendment) was not delivered by a certain date (Third Amendment, §1(D));

3.    The identical rental rate for *all* leased space (Third Amendment, §1(A));

4.    An increase in Allied's share of common area maintenance charges, expressed in the aggregate and covering *all* leased space (Third Amendment, §1(C)).

The obligations in the Golden Glades Lease and the Amendments involve the same two parties and the same subject matter. The language chosen by the parties shows that the Debtors' obligations and BRI's obligations are mutually dependent and interrelated. Unlike *Gardinier*, the Third Amendment does not create any obligations that are owed by the Debtors to a third party, independent of the Debtors' obligations to BRI for the New Building.

Also significant is the fact that the parties had another, separate lease for office space in

yet another building in the same complex.  BRI argues, persuasively, that this demonstrates that when the parties intended their lease arrangements to be separate, they were perfectly capable of making - - and did make - - a truly separate agreement.

When viewed through the lens of the *Gardinier* factors, examination of the Golden Glades Lease and the Third Amendment leads inescapably to the conclusion that they are a single, indivisible agreement, unable to be severed for §365 purposes.  Accordingly, the Golden Glades Lease and the Third Amendment must be assumed or rejected in their entirety.

II.    Request to Abandon Certain Personal Property

Section 554 of the Bankruptcy Code allows the trustee (or a debtor in possession, pursuant to Bankruptcy Code §1107), after notice and a hearing, to abandon an asset of the estate if it is burdensome to the estate or of inconsequential value and benefit.  In abandoning property under  §554, the debtor "need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon."  *In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997).  However, the Supreme Court has recognized a limit on this right when the abandoned property causes a threat to public health.  *Midlantic Nat'l Bank v. New Jersey Dept. Of Envtl. Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

Here, the Debtors have determined that, in their business judgment, the estate would be better positioned without this property.  The property, according to the Debtors, is of negligible commercial value and storing it creates a burden on the estate.  Abandoning the property poses no threat to public safety, nor does it contravene any law or regulation.  BRI does not dispute the abandonment.  Accordingly, the Debtors' motion to abandon certain personal property will be granted effective as of the date of this order.

7

<u>Conclusion</u>

For the reasons stated herein, the Motion will be denied, in part, and granted, in part.  An

appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: May 1, 2013